UNITED STATES BANKRUPTCY COURT
DISTRICT OF MAINE

_____
                                                                                    )
In re:                                                                          )
                                                                                    )
Daniel S. CONNORS                                              )          Chapter 7
and                                                                             )          Case No. 05-22866
Doreen A. CONNORS                                           )
                                                                                    )
_____)

## Memorandum of Decision

This matter, submitted for decision on a stipulated record, presents a discrete question: Are funds received by Maine debtors in consequence of the federal Earned Income Tax Credit ("EITC") and the Child Tax Credit ("CTC")[1] exempt assets under Bankruptcy Code § 522(b)(2)[2] and Maine law? Notwithstanding strong policy arguments to the contrary, I conclude that the applicable statutes do not bestow exempt status on such funds. Accordingly, I will sustain the bankruptcy trustee's objection to the debtors' exemption claims.

## Background

Daniel and Doreen Connors filed for Chapter 7 relief on October 15, 2005. They filed their 2005 federal and state income tax returns in February 2006. The federal return resulted in a total refund of $4,817, comprised of overpaid withholdings ($1,132), an EITC ($1,093), and a CTC ($2,592). In an amended Schedule C the Connors claimed the EITC and the CTC, totaling

---

[1] For a general background of the Earned Income Credit, see In re Brockhouse, 220 B.R. 623, 623-24 (Bankr. C.D. Ill. 1998). For the same, with regard to the Child Tax Credit, see In re Koch, 299 B.R. 523, 524-25 (Bankr. C.D. Ill. 2003).

[2] Unless otherwise indicated, all statutory sections cited are those of the Bankruptcy Reform Act of 1976, as amended ("Bankruptcy Code" or "Code") 11 U.S.C. § 101 et seq, up to, but not including, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (Pub. L. 109-8).

$3,685, as exempt. The Chapter 7 trustee timely objected.

## Discussion

Notwithstanding the federal character of bankruptcy law, this case's resolution turns on provisions of Maine law. A brief bit of background will disclose why. As our Bankruptcy Appellate Panel has explained, examining contemporary exemption issues starts at § 522(b):

> We begin by noting that, under § 522(b), debtors in bankruptcy may elect to utilize either the Bankruptcy Code exemptions set forth in § 522(d) *or* the exemptions provided by their state of residence together with those provided by federal, nonbankruptcy law. If a state has "opted out" of the federal exemption scheme, its resident debtors are restricted to the latter option.

Bruin Portfolio, LLC v. Leicht (In re Leicht), 222 B.R. 670, 672 (B.A.P. 1st Cir. 1998) (emphasis in original) (footnote omitted). Maine is an "opt out" state. 14 M.R.S.A. § 4426. Only state law exemptions (and nonbankruptcy federal exemptions) are available to its resident debtors. Howison v. Hidler (In re Hidler), 192 B.R. 790 (Bankr. D. Me. 1996); Petit v. Fessenden, 182 B.R. 59, 63-64 (D. Me. 1995).[3]

The Connors' claimed exemption rights are pinned to three Maine statutory provisions: 14 M.R.S.A. § 4422(13)(A), 22 M.R.S.A. § 3180, and 22 M.R.S.A. § 3766.[4] Each of them exempts from the reach of creditors some brand of "aid" or "public assistance."[5] Although the

---

[3] The parties have framed the issue in terms of the funds' exempt status, bypassing the argument whether a debtor's receipts by way of the EITC or CTC constitute property of the estate under 11 U.S.C. § 541(a). There has been some debate on that point (regarding the EITC particularly), but the modern decisions generally hold that such funds are estate property. See In re Goertz, 202 B.R. 614, 616-17 (Bankr. W.D. Mo. 1996) (collecting cases).

[4] The Connors point to no nonbankruptcy federal exemption that might pertain.

[5] 14 M.R.S.A. § 4422(13)(A) exempts "a local public assistance benefit." 22 M.R.S.A. § 3180 provides that "[a]ll rights to aid shall be absolutely inalienable by any assignment, execution, pledge or otherwise, and shall not pass, in case of insolvency or bankruptcy, to any trustee, assignee or creditor." And 22 M.R.S.A. § 3766 states that "[a]ll

point is debatable, today's analysis will proceed on the assumption that the EITC and the CTC are each within the general realm of "aid" and "public assistance."[6] Assuming they are within that realm, a close reading of the sections on which the Connors rely discloses, nevertheless, that the brand of "public assistance" or "aid" the legislature intended to shield from creditors does not include the EITC or the CTC. We will examine each in turn.

### A.  14 M.R.S.A. § 4422(13)(A)

Section 4422(13)(A) can be quickly eliminated as a source of exemption rights for the EITC and the CTC. The exemption it provides is expressly limited to "*local* public assistance." The funds in question resulted from *federal* programs and, therefore, cannot reasonably be characterized as fruits of a *local* assistance program.[7]

---

rights to public assistance are absolutely inalienable by any assignment, sale, execution, pledge or otherwise and may not pass, in case of insolvency or bankruptcy, to any trustee, assignee or creditor."

[6]  As to the EITC, this assumption mirrors the majority view. "The modern trend among courts is that EITCs fall within the classification of public assistance." Flanery v. Mathison, 289 B.R. 624, 628 (W.D. Ky. 2003). See also, e.g., In re Longstreet, 246 B.R. 611 (Bankr. S.D. Iowa 2000); In re Brockhouse, 220 B.R. 623, 624 (Bankr. C.D. Ill. 1998); In re Brown, 186 B.R. 224 (Bankr. W.D. Ky. 1995). The trustee's theory, that the EITC is not in the nature of public assistance because it is an IRS administered program and, under it, the government "pays itself first," has been rejected elsewhere. See Flanery, 289 B.R. at 628; Brasher v. McGregor (In re Brasher), 253 B.R. 484, 489 (M.D. Ala. 2000). As to the CTC, the assumption runs counter to the weight of authority. See, e.g., In re Koch, 299 B.R. 523 (Bankr. C.D. Ill. 2003) (CTC is not "public assistance"); In re Beltz, 263 B.R. 525 (Bankr. W.D. Ky. 2001) (only low-income debtors may claim CTC as exempt "public assistance"); In re Steinmetz, 261 B.R. 32 (Bankr. D. Idaho 2001) (CTC is not "public assistance"); In re Dever, 250 B.R. 701, 705-706 (Bankr. D. Idaho 2000) (same).

[7]  The point is obvious if one gives the undefined statutory term "local" its ordinary and natural meaning. E.g., Town of Eagle Lake v. Commissioner, Dept. of Educ., 818 A.2d 1034, 1037 (Me. 2003) (objective of statutory interpretation is to give effect to legislature's intent, as determined by, if possible, plain meaning). Although the question whether the federal EITC (or CTC) could qualify as a "local public assistance benefit" is amenable to lengthier discussion, see Goertz, 202 B.R. at 617-618, the first-impression conclusion is inescapable. If

3

**B.  22 M.R.S.A. § 3180**

As noted above, 22 M.R.S.A. § 3180 provides for the "absolute" inalienability of "rights to aid." Section 3180 is contained within Chapter 855 of Title 22 of the Maine Statutes. The Chapter is entitled "Aid To Needy Persons." "Aid" is a defined term: it means "money payments to, or in behalf of, or medical care or any type of remedial care or any related services to needy individuals who qualify for such assistance under this chapter." 22 M.R.S.A. § 3172(1). Indeed, the balance of Chapter 855 reveals that its provisions are directed exclusively at *medical care* provided for and received by "needy persons." See 22 M.R.S.A. § 3173 (authorizing Department of Human Services to administer programs to medically indigent persons); 22 M.R.S.A. § 3173-C (setting copayments for certain drug programs); 22 M.R.S.A. § 3174-F (providing for provision of dental services in some instances). Because the funds the Connors seek to exempt under 22 M.R.S.A. § 3180 are not in consequence of medical or related need, it is not "aid" within the meaning of Chapter 855. The exemption provided by 22 M.R.S.A. § 3180 does not apply.

**C.  22 M.R.S.A. § 3766**

Section 3766 removes from the reach of creditors or trustees in bankruptcy "[a]ll rights [of the debtor] to public assistance." The section is found in Chapter 1053-B of Title 22. Chapter 1053-B is entitled "Temporary Assistance for Needy Families" (TANF). The purpose

---

"local" benefits included the EITC (or CTC), the result would be "that 'local' would take on a meaning approaching an antonym, i.e., something federal, general, comprehensive and greater in scope than local." Id. at 618. Cf., e.g., In re Boyett, 250 B.R. 822, 825-26 (Bankr. S.D. Ga. 2000) (federal crop loss disaster benefits are not "local public assistance" under Georgia exemption statute).  See also, supra, n.10 (recognizing cases in which EITC is found to be exempt under state exemption statutes in which the term "public assistance" is not modified by "local").

4

of TANF is to "provide[] temporary assistance to needy, dependent children and their parents or caretaker relatives." 22 M.R.S.A. § 3762(1)(E). Chapter 1053-B contains no specific definition of "public assistance," thus distinguishing it from 22 M.R.S.A. § 3180 (where the term "aid" is defined within the same chapter). Here, however, the absence of an express statutory definition does not change the result.

In determining the meaning of statutory terms in Maine, as elsewhere, the "main objective" is "to give effect to the Legislature's intent." Town of Eagle Lake v. Commissioner, Dept. of Educ., 818 A.2d 1034, 1037 (Me. 2003) (citing Hallissey v. School Admin. Dist. No. 77, 755 A.2d 1068, 1073 (Me. 2000)). To accomplish this task, Maine courts "look first to the statute's plain meaning." Great N. Paper, Inc. v. Penobscot Nation, 770 A.2d 574, 580 (Me. 2001). They seek to "'discern from the plain language the real purpose of the legislation, avoiding results that are absurd, inconsistent, unreasonable, or illogical.'" International Paper Co. v. Board of Envtl. Protection, 629 A.2d 597, 599-600 (Me. 1993) (quoting Mahaney v. State of Maine, 610 A.2d 738, 741 (Me. 1992)). Moreover, they must "consider the whole statutory scheme for which the section at issue forms a part so that a harmonious result, presumably the intent of the Legislature, may be achieved." Estate of Whittier, 681 A.2d 1, 2 (Me. 1996); see also Home Builders Ass'n of Maine, Inc. v. Town of Eliot, 750 A.2d 566, 571 (Me. 2000) (when words of a statute are undefined in the statute, yet susceptible to competing uses, "the meaning intended by the Legislature . . . can only be understood in the context of the legislation within which the word is used"); Town of Madison v. Town of Norridgewock, 544 A.2d 317, 319 (Me.1988) ("the term must be given a meaning consistent with the overall statutory context and must be construed in the light of the subject matter, the purpose of the statute and the

consequences of a particular interpretation"); Davis v. Scott Paper Co., 507 A.2d 581, 583 (Me. 1986) ("we must consider the whole statutory scheme of which the section at issue forms a part so that a harmonious result, presumably the intent of the Legislature, may be achieved"). More specifically, the Maine Supreme Court has indicated that a court must consider "sections of the same statutory chapter together" in order to determine legislative intent. State v. Spaulding, 707 A.2d 378, 380 (Me. 1998) (characterizing meaning of Friendship v. Bristol, 132 Me. 285, 289 (Me. 1934)).

The fundamental argument supporting the Connors' exemption claim is that the EITC and the CTC "constitute 'public assistance' and 'aid to needy persons' sufficient to qualify those Credits as exempt under Maine law."[8] They make the case that both programs, especially the EITC, are programs designed to "help" people. I am sympathetic to their cause, but I am not a legislator - policy determinations are not my bailiwick. Reading 22 M.R.S.A. § 3766 in context, as instructed by the Maine Supreme Court, the term "public assistance" is limited to TANF benefits.

Although I agree that the term "public assistance" might lend itself to a plain meaning of great breadth, its use in Maine statutes commends a more cautious approach. The same term appears repeatedly in different contexts, with different meanings. See, e.g., 19-A M.R.S.A. § 2101(11) (defining "public assistance" as "money payments and medical care furnished to or on behalf of dependent children by the State. It does not include assistance furnished a political subdivision"); 19-A M.R.S.A. § 2605(1)(A) ("'Public Assistance' means public assistance as provided under Title 22, sections 3173, 3271, 3762, or 3790"); 22 M.R.S.A. § 9-A(1)(A)

---

[8] Debtors' Response to Chapter 7 Trustee's Objection, dckt. #13, at 4.

("'Public Assistance means any of the following: (1) Temporary assistance for needy families under chapter 1053-B; (2) Food stamp assistance under section 3104; (3) General assistance under chapter 855 and any state-funded portion under chapter 1161; (4) Medical assistance under chapter 855; (5) Assistance under the Parents as Scholars Program pursuant to chapter 1054-B; or (6) Public assistance for veterans under Title 37-B, section 505."); 22 M.R.S.A. § 16(1)(C) (defining "public assistance" as "aid, assistance or benefits available through: (1) A program of temporary assistance for needy families administered in this State pursuant to chapter 1053-B or the Parents as Scholars program pursuant to chapter 1054-B; (2) A program of medical assistance administered in this State pursuant to chapter 855; or (3) Any other program that is based on need and is conducted or administered by this State"). Viewed in this light, the term simply cannot carry its own broad, "plain" meaning, unfettered by context.

Chapter 1053-B is contained within Title 22 ("Health and Welfare"), Part 3 ("Children"). The eleven sections of the chapter all relate exclusively to the TANF program. Sensibly, section 3766 must as well. The section exempts only TANF-related benefits. To rule otherwise would require me to disregard the structure of the statute and allow one particular use of the phrase "public assistance" to subsume all others.[9] Such a result would be illogical. See Thibeault v. Larson, 666 A.2d 112, 114 (Me. 1995) (statutes to be construed to avoid absurd, illogical, or inconsistent results).[10]

---

[9] The Connors would have me rule, as a consequence of exempting "[a]ll rights to public assistance[,]" that "all" "assistance" program payments are untouchable in bankruptcy. To do so would put 22 M.R.S.A. § 3766 at odds with, among other statutory provisions, 14 M.R.S.A. § 4422(13) and 22 M.R.S.A. § 3180.

[10] The Connors cite Hamm v. James (In re James), 406 F.3d 1340 (11th Cir. 2005), a case in which the Eleventh Circuit ruled that a debtor's EITC is protected in bankruptcy under a

7

**Conclusion**

For these reasons, the trustee's objection to the Connors' claimed exemptions is sustained.[11]  A separate order consistent with this opinion will enter forthwith.

| | |
|---|---|
| August 25, 2006 | /s/ James B. Haines, Jr. |
| Date | James B. Haines, Jr.<br>U.S. Bankruptcy Judge |

---

provision of Alabama law which exempts "[a]ll amounts paid or payable as public assistance to needy persons." Ala. Code § 38-4-8.  Like 22 M.R.S.A. § 3766, § 38-4-8 is contained in the "Public Welfare" title of the Alabama Code.  The James court applied a "plain meaning" analysis to the statute, and determined that there was no limit to its breadth.  James, 406 F.3d at 1344-45.  The Maine provision must be read in context, however, with consideration given to "the whole statutory scheme for which the section at issue forms a part." Estate of Whittier, 681 A.2d at 2.  Doing so in this case necessarily limits the scope of the § 3766 exemption.  Moreover, the James court's rationale is suspect.  The majority of cases it relied on actually hold the EITC exempt under state *general exemption* statutes, not the narrower public welfare type statute at issue there (and here).  See In re Tomczyk, 295 B.R. 894 (Bankr. D. Minn. 2003) (EITC exempt under Minnesota exemption statute that exempts "[a]ll relief based on need"); Longstreet, 246 B.R. at 612 (EITC exempt under Iowa exemption statute that exempts "any public assistance benefit"); Brockhouse, 220 B.R. at 625 (EITC exempt under Illinois exemption statute that exempts "public assistance benefit[s]").

[11]  Almost as an afterthought, the Connors argue that if the trustee's objection is sustained, they are nonetheless entitled to that share of the EITC and CTC attributable to the post-petition portion of their tax year.  The point seems self-evident, since their exemption claim extends to prepetition (i.e., what would otherwise remain as estate) property only.